Mr. Robert S. Shafer, Esquire Friday, Eldredge Clark 2000 Regions Center 400 West Capitol Avenue Little Rock, AR 72201-3522
Dear Mr. Shafer:
I am writing in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the popular name and ballot title for a proposed initiated measure. Your popular name and ballot title are as follows:
 Popular Name AN ACT PROVIDING THAT UNMARRIED, COHABITING SEXUAL PARTNERS, BOTH SAME-SEX AND OPPOSITE SEX, MAY NOT ADOPT OR BE FOSTER PARENTS OF CHILDREN LESS THAN EIGHTEEN YEARS OLD Ballot Title A PROPOSED ACT PROVIDING THAT A MINOR MAY NOT BE ADOPTED OR PLACED IN A FOSTER HOME IF THE INDIVIDUAL SEEKING TO ADOPT OR TO SERVE AS A FOSTER PARENT IS COHABITING WITH A SEXUAL PARTNER OUTSIDE OF A MARRIAGE WHICH IS VALID UNDER THE CONSTITUTION AND LAWS OF THIS STATE; STATING THAT THE FOREGOING PROHIBITION APPLIES EQUALLY TO COHABITING SAME-SEX AND OPPOSITE-SEX PARTNERS; STATING THAT THE ACT WILL NOT AFFECT *Page 2 
THE GUARDIANSHIP OF MINORS; DEFINING "MINOR" TO MEAN AN INDIVIDUAL UNDER THE AGE OF EIGHTEEN (18) YEARS; PROVIDING THAT THE DIRECTOR OF THE DEPARTMENT OF HUMAN SERVICES SHALL PROMULGATE REGULATIONS CONSISTENT WITH THE ACT; PROVIDING THAT THE ACT APPLIES PROSPECTIVELY BEGINNING ON JANUARY 1, 2009; AND MAKING THE FOLLOWING FINDINGS AND DECLARATIONS ON BEHALF OF THE PEOPLE OF THIS STATE: FIRST, THAT CHILDREN IN NEED OF ADOPTION OR FOSTER CARE ARE AMONG THE MOST VULNERABLE MEMBERS OF SOCIETY; SECOND, THAT MARRIAGE, AS DEFINED BY THE CONSTITUTION AND LAWS OF THIS STATE, IS THE IDEAL HOME ENVIRONMENT FOR THE REARING OF CHILDREN; THIRD, THAT COHABITATION OUTSIDE OF MARRIAGE CREATES A HOME ENVIRONMENT ASSOCIATED WITH INCREASED RISKS OF DOMESTIC VIOLENCE, CHILD ABUSE, DRUG AND ALCOHOL ABUSE, INSTABILITY, AND POVERTY; AND FOURTH, THAT IT IS IN THE BEST INTERESTS OF CHILDREN IN NEED OF ADOPTION OR FOSTER CARE TO BE REARED IN HOMES IN WHICH ADOPTIVE OR FOSTER PARENTS ARE NOT COHABITING OUTSIDE OF MARRIAGE
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition. Neithercertification nor rejection of a popular name and ballot title reflectsmy view of the merits of the proposal. This Office has been given noauthority to consider the merits of any measure.
In this regard, A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning *Page 3 
the likelihood that it will accomplish its stated objective. In addition, following Arkansas Supreme Court precedent, this office will not address the constitutionality of proposed measures in the context of a ballot title review unless the measure is "clearly contrary to law."Kurrus v. Priest, 342 Ark. 434, 29 S.W.3d, 669 (2000); Donovan v.Priest, 326 Ark. 353, 931 S.W.2d 119 (1996); and Plugge v. McCuen,310 Ark. 654, 841 S.W.2d 139 (1992). Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that thepopular name and ballot title honestly, intelligibly, and fairly setforth the purpose of the proposed amendment or act. See Arkansas Women'sPolitical Caucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277,285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418,798 S.W.2d 34 (1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988);Hoban v. Hall, supra; and Walton v. McDonald, 192 Ark. 1155,97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot *Page 4 
title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139
(1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law.Christian Civic Action Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605
(1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen,303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558,339 S.W.2d 104 (1960).
Having analyzed your proposed initiated act, as well as your proposed popular name and ballot title under the above precepts, I have several concerns regarding the language used. I am concerned initially over the omission of an enacting clause from the language of your proposed initiated act. I also have concerns about a discrepancy between the language of your proposed popular name and the text of your measure. Finally, I am concerned about the inclusion and summarization of what appears to be "preamble" language in your proposed ballot title. I must therefore reject your proposed popular name and ballot title under A.C.A. § 7-9-107(c) and instruct you to redesign the language.
As an initial matter, I must note that the text of your initiated act does not contain a required enacting clause. The introductory language of your proposed act instead begins with the following language: "Section 1. Findings. The people of Arkansas find and declare: (a) That children in need of adoption or foster care are among the most vulnerable members of society. . . ."
Arkansas Constitution Amendment 7 (now codified at Art. 5, § 1), provides that: "The style of all bills initiated and submitted under the provisions of this section shall be "Be It Enacted by the People of the State of Arkansas (municipality, or county, as the case may be)." As stated in Mertz v. States, 318 Ark. 390, 394-95, 885 S.W.2d 853 (1994): "Simply put . . . all bills initiated must be submitted in the following language set forth in Amendment 7: "`Be it enacted by the people of the State of Arkansas' (municipality, or county as the case may be). Thus our constitution speaks, and thus our law requires." See also UnitedStates Term Limits, Inc. v. Hill, 316 Ark. 251, 872 S.W.2d 349 (1994) (recognizing that an *Page 5 
enacting clause is required for "bills" initiated by the people, but not for constitutional amendments so initiated).
The Arkansas Constitution thus clearly requires the inclusion of an enacting clause in your proposed initiated act. Your submission to this office, however, is not in its final "petition" format. It may be your intention to add an enacting clause when the language of your proposed initiated act is incorporated into a formal petition. The language of the constitution requires the enacting clause to be included in the "style of [the] bill," however. Your submitted text is presumably the entire language of your proposed "bill." Because this language does not include an enacting clause and because an act initiated without such a clause would be subject to challenge, voters may be misled as to the effectiveness of the measure. I therefore find it necessary to point out the potential omission.
With regard to your proposed popular name, I must note that it appears to deviate somewhat from the language of the text of your measure and from the summarization of your measure in your proposed ballot title. The popular name you propose is "An Act Providing That Unmarried,Cohabiting Sexual Partners, Both Same-Sex and Opposite-Sex, May NotAdopt Or Be Foster Parents Of Children Less Than Eighteen Years Old." (Emphasis added). This language refers to the ability of unmarried "partners" to adopt or be foster parents. The language of the text of your measure, however, refers to the ability of an individual to adopt or be a foster parent. Section 2(a) states in this regard that "A minor may not be adopted or placed in a foster home if the individual seeking to adopt or to serve as a foster parent is cohabiting with a sexualpartner outside of a marriage which is valid under the constitution and laws of this state." (Emphasis added). I am concerned, therefore, that the language of your proposed popular name may lead to confusion or mislead the voters. In this regard voters reading the popular name may be led to believe that your measure prohibits only the "joint" adoption or fostering of minors by unmarried partners and not the individual adoption or fostering of such persons, where that individual also cohabits for purposes of your measure.[1] *Page 6 
Finally, I am concerned about the inclusion in your proposed ballot title of language summarizing your measure's "findings" and declarations. Section 1 of the text of your measure provides as follows:
 Section 1. Findings
 The people of Arkansas find and declare:
 (a) That children in need of adoption or foster care are among the most vulnerable members of society;
 (b) That marriage, as defined by the constitution and laws of this state, is the ideal home environment for the rearing of children;
 (c) That cohabitation outside of marriage creates a home environment associated with increased risks of domestic violence, child abuse, drug and alcohol abuse, instability, and poverty; and
 (d) That it is in the best interests of children in need of adoption or foster care to be reared in homes in which adoptive or foster parents are not cohabiting outside of marriage.
Your proposed ballot title includes language substantially repeating these findings and declarations. This fact concerns me in light of language in Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992) and other applicable case law. In Plugge, the petitioners challenging the ballot title for the "Arkansas Term Limitation Amendment" objected that certain language in the "preamble" of that measure was not summarized in the ballot title. The preamble language stated that: "The *Page 7 
people of Arkansas find and declare that elected officials who remain in office too long become preoccupied with reelection and ignore their duties as representatives of the people. Entrenched incumbency has reduced voter participation and has led to an electoral system that is less free, less competitive, and less representative than the system established by the Founding Fathers. Therefore, the people of Arkansas, exercising their reserved powers, herein limit the terms of elected officials." The Arkansas Supreme Court disagreed that this preamble language should have been included in the ballot title. After setting out the applicable standard for reviewing ballot titles, the court stated:
 In considering petitioners' arguments in view of the foregoing rules, we are also met with those cases indicating that a preamble or title simply is not a part of a measure. See McMahan v. Bd. of Trustees U. of A., 255 Ark. 108, 499 S.W.2d 56
(1973); Roscoe v. Water and Sewer Imp. Dist. No. 1, 216 Ark. 109, 224 S.W.2d 356 (1949); Oliver v. Southern Trust Co., 138 Ark. 381, 212 S.W. 77 (1919). A title or preamble of an act is in no sense controlling, and is only properly considered if the act itself is ambiguous. McMahan, 255 Ark. at 110, 499 S.W.2d at 57.
 Here, petitioners' concerns regarding the proposed amendment's preamble are misplaced. In fact, if the preamble had been included, some of its language may have raised more questions in voters' minds than it resolved. Clearly, the preamble is not a part of the text of the proposed amendment and for this reason alone, we hold its verbiage should not have been included in the amendment's ballot title.
Id. at 657.
I am concerned, similarly, that the "findings" language of your measure should not be included in the ballot title.[2] Although the primary effect of the Plugge court's *Page 8 
ruling is that preamble language is not required to be included, the court also noted that the inclusion of the preamble language "may have raised more questions in voters' minds than it resolved." Gratuitous inclusion of preamble language in a ballot title may therefore be problematic. This is particularly true, in my opinion, where the language may be viewed as lending partisan coloring to the merits of the proposal.
For example, in Johnson v. Hall, 229 Ark. 400, 316 S.W.2d 194 (1958), the ballot title of a proposed constitutional amendment was "An Amendment Prohibiting Operation of Trains with Unsafe and Inadequate Crews." The object of this measure was to place in the constitution the substance of an existing statute that regulated the number of crewman required to operate trains, the so-called "full crew law." The Arkansas Supreme Court struck down the ballot title, stating:
 We think it can safely be said that all citizens are against the operation of trains that do not carry sufficient crews to reasonably assure safety. We cannot conceive that anyone would vote the contrary of this proposition, viz, to permit the operation of trains with unsafe and inadequate crews. The amendment itself seeks to declare that to operate trains with inadequate crews, (meaning, of course, a crew less than that provided in the act), "is detrimental to the safety and welfare of the people. * * *" But there has been no prior determination that this assertion is always true. Actually, this is a fact question, depending upon the circumstances in each case. Such reasoning is in the nature of "begging the question," which is defined as "founding a conclusion on a basis that needs to be proved as much as the conclusion itself." Here, the voter is urged to support a measure which provides for a particular crew in the operation of trains, because to operate with a smaller crew is, according to the ballot title, "unsafe and inadequate" — but the "unsafe and inadequate" remains to be proved. As was stated in Bradley v. Hall, 220 Ark. 925, 251 S.W.2d 470, "In studying his ballot, the voter is not bound by the rule of caveat emptor. He is *Page 9 
entitled to form his own conclusions, not to have them presented to him ready-made."
Id. at 403.
The Arkansas Supreme Court in Johnson v. Hall therefore struck the ballot title, concluding that it "so obviously contain[ed] strong partisan coloring. . . ." See also, Arkansas Women's Political Caucus v.Riviere, 283 Ark. 463, 677 S.W.2d 846 (1984) (striking the popular name "Unborn Child Amendment" as partisan because "the ballot name . . . gives the voters only the impression the proponents of the amendment want them to have").
I am concerned similarly, that the "Findings" set out in your measure should not be included in the ballot title for your measure. I appreciate that the inclusion of this language in your ballot title more completely summarizes the substance of your measure. Voters who are deciding whether to adopt your measure may wish to know that they are making and declaring the listed findings. Such preamble language, however, is "no part of the measure," is "in no sense controlling" and is of no legal effect save perhaps shedding light on any ambiguities in the text. Plugge, supra. Additionally, it may be viewed as lending partisan coloring to the merits of your Act. On balance, therefore, its inclusion is more problematic than its omission.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107 and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
The failure to include an enacting clause in the language of your proposed act and the problems recited above concerning your proposed popular name and ballot title prevent me from certifying your submission at this time. My statutory duty, under these circumstances, is to reject your proposed popular name and ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure, popular name and ballot title. See A.C.A. § 7-9-107(c). You may, after *Page 10 
clarification of the matters discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] Under current Arkansas law, married couples may adopt jointly, married individuals may adopt individually under certain circumstances, and unmarried adults may adopt individually. A.C.A. § 9-9-204 (Repl. 2002). Additionally, under current Arkansas law and policies, foster parents may be either married couples applying jointly, or single persons under certain circumstances, but may not be cohabitating partners. See A.C.A. § 9-28-402(13) (Supp. 2007) and Arkansas Department of Human Services, Division of Children and Family Services "Standards for Approval of Family Foster Homes," Section 6(A)(1) and (5). Seealso Executive Directive FSPP 2005-01 (February 17, 2005) (prohibiting the presence of "cohabitating adults" in foster homes).
[2] Although your measure styles the introductory language as "Findings," it appears that the language takes the form of what is commonly referred to as a "preamble." See Prewitt v. Warfield,203 Ark. 137, 156 S.W.2d 158 (1941) (stating that a preamble "usually contains the motives and inducements to the making of the act"). See alsoBlack's Law Dictionary (8th Ed. 2004) at 1214 (defining "preamble" as "An introductory statement in a constitution, statute, or other document explaining the document's basis and objective; esp., a statutory recital of the inconveniences for which the statute is designed to provide a remedy"). *Page 1