243 P.3d 1203 (2010)
239 Or. App. 224
In the Matter of the Compensation of Anita M. Martinez, Claimant.
SAFEWAY STORES, INC., Petitioner,
v.
Anita M. MARTINEZ, Respondent.
0700852; A139838.
Court of Appeals of Oregon.
Argued and Submitted January 19, 2010.
Decided December 1, 2010.
*1204 Howard R. Nielsen, Beaverton, argued the cause for petitioner. On the briefs were Courtney C. Kreutz and Radler, Bohy & Replogle, LLP.
John M. Oswald, Portland, argued the cause for respondent. With him on the brief was Bottini, Bottini & Oswald, PC.
Before WOLLHEIM, Presiding Judge, and SERCOMBE, Judge, and CARSON, Senior Judge.
WOLLHEIM, P.J.
Employer petitions for judicial review of a Workers' Compensation Board order directing employer to pay claimant temporary partial disability benefits and not reduce those payments by the amount of short-term disability benefit payments that it made to claimant. We review the board's order for errors of law, ORS 656.298(7); ORS 183.482(8), and affirm.
The relevant facts are not in dispute, and we state them consistently with the board's findings. On April 7, 2005, claimant suffered a compensable knee injury that required surgery. Following the operation, claimant's surgeon released claimant to modified work, and claimant returned to modified work the first week of September 2005. Claimant received temporary partial disability benefits based on the difference between her pre-injury wages and the wages she earned at modified work. Less than two weeks later, on September 10, 2005, claimant suffered a heart attack. Because of the heart attack, claimant was unable to work until October 31, 2005, when she returned to modified work.
*1205 The dispute in this case arises because claimant simultaneously collected temporary disability benefits and short-term disability benefits for her on-the-job knee injury and short-term disability benefits for her off-the-job heart attack. For context, we begin with a description of the benefits claimant received.
Claimant received payments under a short-term disability plan for the wages she lost due to her heart attack between September 2005 and January 2006. The benefits were provided under an income protection plan sponsored by employer without contribution from claimant. The plan provides that, in the event that an off-the-job sickness or injury prevents the worker from working for a period of time, the plan replaces a portion of the worker's income. The plan pays 66 and two-thirds percent of the worker's weekly earnings. It expressly excludes benefits for disabilities due to an occupational sickness or injury. As to sick leave, the plan provides that short-term disability benefits will not be reduced by sick leave payments that a worker receives, and allows a worker to use accumulated sick leave to supplement the short-term disability benefit up to 100 percent of the worker's pay.
Next, we turn to the payment of temporary partial disability payments under the Workers' Compensation Law. In the event that a worker's disability is or becomes partial, the worker is entitled to temporary partial disability benefits proportionate to the worker's lost wages. Those benefits are calculated by subtracting the wages the worker earns, or is able to earn, from the wages used to calculate temporary total disability. ORS 656.212(2); Stone Forest Industries, Inc. v. Bowler, 147 Or.App. 81, 84, 934 P.2d 1138 (1997). Thus, calculation of temporary partial disability benefits requires a determination of the wages that the worker earns or is able to earn while partially disabled.
Here, employer concluded that the short-term disability benefits that claimant received reduce the temporary partial disability benefits to which claimant is entitled. Accordingly, employer paid claimant a reduced amount of temporary partial disability. Claimant disagreed and requested a hearing. She argued that employer could not reduce her partial disability benefits by the amount of short-term disability benefits that she received. Employer argued that the reduction was mandated for two reasons: (1) short-term disability benefits are a "similar advantage" to board, rent, housing, or lodging and are therefore "wages" as defined by ORS 656.005(29); or, alternatively, (2) short-term disability benefits are analogous to sick leave payments and are therefore "post-injury wages" under OAR XXX-XXX-XXXX(10).[1]
The Administrative Law Judge agreed with claimant and ordered employer to pay claimant temporary partial disability benefits without reducing those benefits by the amount of short-term disability benefits claimant received. Employer requested review by the board, and the board affirmed.
The board adopted the ALJ's reasoning that short-term disability benefits are not wages under ORS 656.005(29) because short-term disability benefits are not "the same kind of remuneration as `board, rent, housing, and lodging,'" as provided by the statute. The board also concluded that short term disability benefits are not post-injury wages under OAR XXX-XXX-XXXX(10), reasoning that employer distinguished between sick leave payments and short-term disability payments, that employer made short term disability payments even after claimant exhausted her sick leave, and that the short term disability plan distinguished between short-term disability and sick leave by describing accumulated sick leave as a separate supplement to the short-term disability benefit.
On judicial review, the parties repeat their arguments. We begin with employer's argument that short-term disability benefits *1206 are "wages" under ORS 656.005(29). We examine the text of that statute in context and any helpful legislative history offered by the parties. State v. Gaines, 346 Or. 160, 171-72, 206 P.3d 1042 (2009); PGE v. Bureau of Labor and Industries, 317 Or. 606, 610-12, 859 P.2d 1143 (1993). Our paramount goal in interpreting a statute is to discern the legislature's intent, and the most persuasive evidence of the legislature's intent is the words the legislature used. Gaines, 346 Or. at 171, 206 P.3d 1042.
Accordingly, we begin with the statutory definition of "wages":
"`Wages' means the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident, including reasonable value of board, rent, housing, lodging or similar advantage received from the employer, and includes the amount of tips required to be reported by the employer * * *."
ORS 656.005(29). Under that definition, wages are the agreed-upon rate of payment for the services a worker provides to the employer. Here, employer does not argue that the short-term disability benefits are paid in exchange for services. Indeed, the money was paid precisely because claimant could not provide services. Nonetheless, employer argues that short-term disability benefits are included in the definition of wages because they are a similar advantage to board, rent, housing, and lodging. But that argument ignores the problem that we just described; the short-term disability benefits in this case were paid because claimant could not provide services. Setting that problem aside, we disagree with employer that short-term disability benefits are a similar advantage to board, rent, housing, and lodging.
Although the legislature's use of the term "including" means that the legislature intended that wages are not limited solely to money paid by the employer to the worker in exchange for services, the itemized list following "including" is nonexclusive. Yet the terms "including" and "or similar advantage received" provide boundaries to the items that fall within the list. "Including" identifies items that share characteristics with named items. See State v. Kurtz, 233 Or. App. 573, 577, 228 P.3d 583, rev den, 348 Or. 621, 237 P.3d 221 (2010) ("Includes" is a nonexclusive term that "describes in particular those things that are contained in or embraced by the term."). The phrase "or similar advantage received" likewise permits inclusion of some unnamed items, but only those unnamed items that share relevant characteristics with the listed items. Thus, we must determine whether short-term disability benefits are a similar advantage as board, rent, housing, and lodging.
Board, rent, housing, and lodging are all payments for specific benefits or are specific benefits themselves. Housing and lodging are specific benefits of shelter. Similarly, rent and board are payments for specific benefits of shelter or food. In contrast, short-term disability benefits are fungible. Those benefits may be used to pay for meals, rent, housing, or lodging, but the benefits are not limited to those narrow uses. Rather, the payments of short-term disability benefits may be used to pay for any item available for purchase, or saved, or even given away. Thus, we conclude that employer is incorrect. Short-term disability benefits are not a "similar advantage" to board, rent, housing, and lodging. The board did not err in reaching that conclusion.[2]
We next consider whether short-term disability benefits are "post injury wages" under OAR XXX-XXX-XXXX(10).[3] We *1207 interpret administrative rules so as to give effect to the intent of the body that promulgated the rule. Abu-Adas v. Employment Dept., 325 Or. 480, 485, 940 P.2d 1219 (1997). We do so by utilizing the same methodology that we use to interpret statutes. Tye v. McFetridge, 342 Or. 61, 69, 149 P.3d 1111 (2006). That is, we begin by examining the text of the rule in context. Context includes other provisions of the same rule, related rules, the statute pursuant to which the rule was created, and other related statutes. Abu-Adas, 325 Or. at 485, 940 P.2d 1219.
OAR XXX-XXX-XXXX(10) defines "post-injury wages" as "wages a worker could have earned by accepting a job offer, or actual wages earned, whichever is greater, and any unemployment, sick or vacation leave payments received." That is, the rule provides a list of items that are "post-injury wages."[4] Employer argues that short-term disability benefits are "post-injury wages" because they are sick leave. Sick leave is not defined by the rule, so we give that term its common meaning. Sick leave is a contractual benefit that an employer provides employees. See, e.g., Funkhouser v. Wells Fargo Corp., 224 Or.App. 308, 313, 197 P.3d 592 (2008), rev. den., 346 Or. 115, 205 P.3d 887 (2009) (sick leave is a vested right when the employment agreement creating the right so provides). Here, claimant's employment contract defines sick leave as a benefit that replaces lost wages when an employee cannot work due to sickness or injury. Short-term disability benefits provided by employer are an income protection plan that is available when an illness prevents an employee from working. However, the analogy stops there. Sick leave can accumulate under the employment agreement. In contrast, the short-term disability benefits at issue here cannot, and do not, accumulate. If available, those benefits last for a discrete period of time and are supplemented by sick leave. Moreover, the short-term disability plan distinguishes between the sick leave benefits and the short-term disability benefits. The plan states, "[employer] will not subtract from your gross disability payment income you receive from, but not limited to, the following: * * * sick pay." Employer also distinguished between short-term disability benefits and sick leave payments that it paid. Accordingly, we conclude that the short-term disability benefits at issue here are not the same as sick leave.
Nonetheless, employer argues that the rule encompasses more than ordinary sick leave, because post-injury wages include "any" sick leave payments received and short-term disability benefits are analogous to sick leave. That is, employer argues that the term "any" preceding "sick leave" expands *1208 the definition of "sick leave" to include short -term disability benefits. "Any" is commonly "used as a function word esp. in interrogative and conditional expressions to indicate one that is not a particular or definite individual of the given category but whichever one chance may select." Webster's Third New Int'l Dictionary 97 (unabridged ed 2002) (emphasis added). Thus, in the context of this case, "any" is open-ended with respect to quantity but it is closed with respect to category; the use of the term "any" does not represent an intent to make the category nonexclusive as to the category of benefits. By contrast, for the reasons explained above, the use of the term "includes" makes a category nonexclusive, and the Department of Consumer and Business Services (DCBS) used that nonexclusive term in the same rule, OAR XXX-XXX-XXXX(8) ("[t]his includes but is not limited to"), demonstrating that it knew how to make a list nonexclusive. Thus, we conclude that DCBS intended to make the list exclusive as to sick leave.
Returning to our interpretation of "post-injury wages," we focus on the term "any." That term functions to extend the definition of "post-injury wage earnings" to all sick leave payments received without limit as to how many sick leave payments were made. "Sick leave" is limited to that particularly described term. It does not extend to terms that are analogous to but are not "sick leave." And, as we discussed before, "sick leave" may be comparable to short-term disability benefits, but short-term disability benefits are not a type of sick leave. We conclude that short-term disability benefits are not sick leave as used in the definition of "post-injury wages" in the administrative rule; and, therefore, short-term disability benefits are not "post-injury wages."
In short, the board did not err in ordering employer to pay claimant temporary partial disability without a deduction for the short-term disability benefits claimant received.
Affirmed.
NOTES
[1] In its opening brief on appeal, employer argues that short-term disability benefits are wages under ORS 656.005(29) and therefore are actual wages received under OAR XXX-XXX-XXXX(10). That argument is consistent with the board's treatment of employer's argument, viz., if the money paid is not wages as defined by the statute, it cannot be "actual wages received" under the administrative rule; and, because the money paid is not a "similar advantage" to the listed advantages in the statute, it is not wages.
[2] In its brief and at oral argument employer argued that ORS 656.005(29) should be interpreted consistently with the Supreme Court's interpretation of 33 USC section 902(13) in Morrison-Knudsen Constr. Co. v. Director, OWCP, 461 U.S. 624, 103 S.Ct. 2045, 76 L.Ed.2d 194 (1983). We reject employer's argument because neither the federal statute nor the Supreme Court's interpretation provide helpful context to ORS 656.005(29).
[3] OAR XXX-XXX-XXXX(10) implements statutes other than ORS 656.005(29), so our analysis of "wages" in that statute is not dispositive of employer's alternate agreement regarding the administrative rule.
[4] OAR XXX-XXX-XXXX provides, in part:

"(1) The amount of temporary partial disability compensation due a worker shall be determined by:
"(a) Subtracting post-injury wage earnings by the worker from any kind of work from
"(b) The wage used to compute the rate of compensation at the time of injury; then
"(c) Dividing the difference by the wage earnings used in subsection (b) to arrive at the percentage of loss of wages; then
"(d) Multiplying the current temporary total disability compensation rate by the percentage of loss of wages in subsection (c).
"* * * * *
"(8) Temporary partial disability must be paid at the full temporary total disability rate as of the date a modified job no longer exists or the job offer is withdrawn by the employer. This includes, but is not limited to, termination of temporary employment, layoff or plant closure. A worker who has been released to and doing modified work at the same wage as at the time of injury from the onset of the claim shall be included in this section. For the purpose of this rule, when a worker who has been doing modified work quits the job or the employer terminates the worker for violation of work rules or other disciplinary reasons it is not a withdrawal of a job offer by the employer, but shall be considered the same as the worker refusing wage earning employment under ORS 656.325(5)(a). This section does not apply to those situations described in sections (5), (6), and (7) of this rule.
"* * * * *
"(10) * * * for purposes of subsection (1)(a), `post-injury wages' are the wages the worker could have earned by accepting a job offer, or actual wages earned, whichever is greater, and any unemployment, sick or vacation leave payments received."